May it please the Court, my name is Tim Bechtold, here representing the Forest Service Employees for Environmental Ethics. The Forest Service Employees for Environmental Ethics is comprised primarily of former and current Forest Service employees. So what's at issue in this case is 16 U.S.C. 472 AG, which is a provision that requires timber designation and marking to be done by employees of the Secretary of Agriculture. So the Forest Service employees have a particular interest in here because they're protecting their own. Well, it's kind of a labor dispute, a little bit. To some degree. I have a question about mootness in this case that I wonder if you would address for me. And as you do that, would you talk to me about footnote 3 in the motion to vacate the preliminary injunction, whether that doesn't do away with whether there's any live controversy here? Well, under the Greenpeace action from this quarter, 1991, the capable of repetition yet evading review doctrine is when you look at a case and you say, well, is this something that's too short to be reviewed completely by the court or is it going to happen or is it going to be done? And this is a case where even though briefing was completed, you know, two years ago, and, you know, this case arose in 2004 and district court briefing was done and judgment came out in 2005, and then two years later, of course, we're in here. But the situation there is it took three years for the court to review this today, but all the trees are gone. The trees are cut. It's been, you know, they've been marked and that part is well done. So obviously, it fits within the capable, the short-duration thing. The second criteria. What remains to be done in the future that could possibly raise the same issue again? Well, two things, Your Honor. The first is, is that even when the Forest Service changed their language in the contract to comply with the district court's ruling, they also said we reserve the right to revisit this on the merits situation. And moreover, the Forest Service handbook at 2441.03 still today, I checked this morning, still today says that designation by description may be used when the purchaser marks the timber. Still today, the Forest Service handbook, in other words, the way the Forest Service is supposed to handle their timber sales. But weren't the contracts amended or wasn't the language in the contract changed to accommodate the statute in this particular case? In this particular case, they were. And doesn't the Forest Service agree that that should be the language for the future? No, they do not agree. In fact, they specifically said, look, this is an emergency situation. We need to get these trees off the ground. Therefore, for purposes of this case, for this injunction right now, we're going to agree to go along with you, Judge. But we don't agree that you're right. We think that we're right. And moreover, our handbook says that we can do this if we want to. Well, I guess part of my question, I'm looking for it and I'm not finding it at the moment, but it is interpreting the agreement that allowed the preliminary injunction to be lifted and whether that is to be read as saying we reserve this issue for future litigation or whether we reserve it for future unilateral action. And I'm not sure if I'm being clear, but if what they're saying is we're going to agree to this now, but we reserve our right to complain about it in court later, that seems different than we reserve the right to go back to the old contract language for 8,000 more acres. Do you understand what I'm getting at? What were they saying? And I guess they'll tell me when they stand up here. Well, what I can presume they're saying is that, you know, for the purpose of the injunction, we'll go along with it because we need to get these trees off the ground now. And so we need the injunction lifted because of the emergency nature that they determined that the trees would degenerate to the point, if they had to wait to the merit stage, that they would degenerate to the point that they wouldn't be harvestable anymore. And so they said, look, we'll change it now. But the footnote specifically says we reserve the right to revisit this at the merit stage of this litigation. Right. Well, to me that's ambiguous. And the reason, and it relates to the mootness. If the government were to stand up here today and say we are never going back to that old contract language unless a court, after hearing the merits of the matter, tells us that it is okay under the statute, that's reserving a litigation position, sort of like a motion to suppress an awfully guilty. That would seem to me to create a mootness situation for you because if they are not ever going to go back to the old contract language, there's sort of nothing left to argue about. If they're saying what you've said, then maybe it's different. So I'm going to ask them to talk about that. Well, furthermore, FC has asked for a declaratory judgment to declare that they have to follow the specific word of the law, that 472AG says that the forester employees of the secretary have to designate marked trees. And so as long as the Forest Service handbook says that we can have timber purchases marked trees, then I think we have a controversy because the Forest Service, the way they're supposed to do business now is to say, well, in these situations, when we designate, we can have the timber purchaser designate the trees. Now, that's specifically contrary to law, and that's why FC, the Forest Service employees, is asking the Court for a declaratory judgment that the Forest Service interpretation of that law is incorrect. The case has certainly moved so far as the Czech Republic trainee is concerned. He's gone back to the Czech Republic, as I understand it. Is that correct? At the time of briefing, of course, marking was still going on. That was two years ago. But now that these trees have been dealt with and the person's back, the overseas person is back overseas. Exactly. For this case, I mean, two years ago at the time of briefing it was still alive because they're still marking trees. Now they're not marking trees, and so there's no more marking to do for this case. So even with respect to the declaratory relief, if the government takes the position that the only way they can go back to the previous contract language is if a court tells them they can, where does that leave you? Well, that would be an interesting thing. They would have to, which we definitely want the court to do, is they would have to withdraw their directive from the Forest Service manual because that's not what the Forest Service manual says. The Forest Service manual specifically says that they can designate trees. So that's still a live controversy. That's your argument, that because there is an offending portion of the manual and there are still trees to be marked in the future and litigation takes forever. Because that's why it's capable of repetition yet evading review. So say the next time there's a big timber project, and once again they use this same thing, the Forest Service handbook that says, okay, we have to designate this timber because we don't have the resources to do ourselves, which is exactly what they did with the biscuit project. Then they're going to say, well, FC is going to step in and say, but that's a violation of the statute. And they're going to say, okay, for purposes of this one, maybe. But there's hundreds of timber sales across the United States every year, and FC doesn't monitor every contract of every sale as closely as they had this. And so what we'd like the Court to tell the Forest Service very declaratively is that when you do a timber sale, you have to comply with the plain language of the statute, which is that employees of the Secretary must mark and designate the trees, not someone else. Even when the record indicates that this individual who was the target of that particular assertion is no longer marking trees? In fact, he's left the country. Well, that's just part of it, Your Honor. The other part of it is there were sales in the biscuit project that were marked by the purchasers. That was enjoined by the district court, but it happened. But that was the subject of the settlement, though, was it not? Or at least the modification? Well, what happened was is first the Forest Service created a contract that said the purchaser may designate and mark. Then we filed suit. Then the Forest Service amended their contract that said the purchasers will designate and the Forest Service will approve. And then the district court said, well, that's not good enough. And then the Forest Service responded and said, okay, we'll mark the trees. So that was the three-step process. But there were plenty of trees that were marked by the purchasers before the injunction was put in place. And what we're asking the court to do is for a declaratory judgment that in the future, the Forest Service cannot use a contract provision such as that in Forest Service Manual 244103. Now, isn't there something in the record which indicates that so far as the Forest Service is concerned, the only marking that they committed to was the marking done by their own employees, notwithstanding the fact there might have been marking by the purchasers as well? You're speaking after the injunction, I presume. Yes. After the injunction, the Forest Service said, yes, our employees will be the ones who mark for this sale. All right. For purpose of this injunction. Assuming the matter is not moot, you still have a standing issue. Tell us about your views on standing, because that obviously has been raised. The – in order to show Article III standing, of course, under Lujan, the Forest Service employees have to show that they have injury in fact that's concrete and particularized and actual and imminent. It's fairly traceable to the acts of the Forest Service, and it's likely they can be redressed by a favorable decision. Now, this is a situation similar to the kind of trial of the Long Beach, where what FC is alleging here is saying is that they have procedural injury. And under procedural injury – Well, now, these are all retired Forest Service employees. What is the specific injury to them arising out of the marking policies, let's say? Well, actually, it's – they're not all retired. There are many current Forest Service employees who are members of FC. Well, even them. What is the direct injury to the employees as employees? Well, the – as established in one of the declarations of Jim Furnish, when a professional forester marks the trees – and this is a situation where the foresters are marking the trees that shall not be cut. In other words, when the foresters go into the woods, what they're looking for is the whole resource. They see the forest, whereas a timber purchaser just sees the trees. They're looking for the timber value. But a Forest Service employee is obligated to look at all the resources – wildlife, water, wilderness, and timber, not just the trees. So when they go and mark trees, they're assessing the value of those trees for their wildlife purpose, for their water retention and water quality purposes, and not just for their timber value. The harm to professional foresters who are concerned about following the law on environmental ethics is, is that by having a timber purchaser mark those trees, that they're not being concerned with the big picture. Now, under the, you know, the Massachusetts EPA case that the Supreme Court heard just in April, they reiterated that a litigant who alleges procedural harm doesn't have to show that the substantive result would be different. He just has to show that the procedure was connected to the substantive result. So in other words, the Forest Service can say, well, we had, we had this check volunteer, we had the purchaser mark the trees, but, you know, it's the same, the same thing happened. It was no different. They would have, they marked the same trees as our Forest Service employees would have.  Well, that's not the standard. Under procedural injury, the standard is that, that it's related to. They don't have to show the result is different or would have been different. So, so the question then is, well, does, does NFMA, does this portion of NFMA under 472 AG, does it offer some procedural relief? So under Lujan, so a plaintiff can, can enforce some procedural rights, so long as procedures in questions are designed to protect some threatened concrete interest, that is the ultimate basis of his standing. And that's where you get to paragraph 12 of your complaint, which describes that your current employees, users of the forest, scientific purposes, all of that. Exactly. Okay. And so, and so under, so FC contends that, you know, there's, there's NEPA, which is a strictly procedural statute, and with the Forest Service argument briefing as well, NFMA is a, is a substantive statute. But there's plenty of procedural requirements in NFMA, and this is one of them. It, what this is, 472 AG is, is a procedural requirement that, to have the Forest Service mark trees. It's not saying, well, you have to mark trees that are 10 inches in diameter. You have to mark only Grand Fir. You cannot mark Ponderosa Pine. It's not that sort of substantive statute. It's a procedural part of the statute. Now, to determine whether a statutory duty creates a corrective procedural right, under the Fernandez case from this circuit in 1980, 1988, we look to the statutory language, the statutory purpose, and the legislative history. In this case, the, the plain language of 472 AG says, this is the process you follow. And the purpose of NFMA, which is the statutory purpose here, the, the purpose of NEPA was to change the way, fundamentally change the way our national forests are managed. Prior to NFMA, which passed in 76, there was the Organic Act from the late 19th century. And what it did is, it created a series of procedural steps that the Forest Service has to manage, to, to manage its forests. And the legislative history is, is clear that there is a process that's changing, because the Organic Act said, in, in regarding to this specific activity, is that, that the Forest Service had the ability to have some person appointed to mark trees, whereas NFMA changed that specifically and said, it's not just some person appointed to mark trees. Now it has to be employees of the Secretary. So the procedural right is, is created under 472 AG. So there is a procedural right. And the, because the Forest Service, the Forest Service refused in this case, and still does under their handbook, to have that procedural right, their interpretation of the procedural right conforms to the statute, then FC is harmed. So there are a series of cases where this Court has found that, that there's conferred a procedural right, including Halvey Norton, Idaho Supporting Congress, and Northwoods Wilderness Recovery, all cited in the brief. It also seems to me that the real concern of the FC plaintiffs here is the salvage logging itself. That's the, the environmental damage is done by the logging, not necessarily by the marking, particularly where there is no showing that any improperly marked trees were ever sold. You know, Your Honor, that's what the Forest Service argued, and that's simply not correct. The Forest Service employees have a vested interest in having Forest Service professionals be the ones who mark the trees. How do they know? And, and there was briefing about the monitoring and, and distance away from ephemeral streams and things like that. There was a subject of different injunctive and different injunctive requests at the district court level. So, in fact, there were some instances where FC alleged the wrong thing had happened on the ground. But that's not an issue on appeal. The issue on appeal is whether or not the Forest Service employees should be the, Forest Service employees, employees of the Secretary should be the ones who mark trees. So there is evidence, Your Honor, that the wrong trees were marked, but that's not what that's, what's at issue here. Are there any evidence that the wrong trees were marked and then, because of the contract, were actually cut down? In other words, that would, I mean, some, some, an event which was a clear violation of the statute? Yes. Yes, but that's, but that's not at issue here. So there were instances where the wrong trees were marked and they were cut down in violation of the statute. And that evidence is in the record in this case? It is. All right. So to clarify, what you're asking is, did they, did they cut down trees that were improperly marked? Yes, they did. So, but it's kind of a reverse thing, because they marked trees to keep. And so if they failed to mark a tree, then it got cut down. But at this point, Your Honor, I'd like to reserve a couple. You may do so, counsel. That's fine. We'll hear from the service. Good morning. May it please the Court, my name is Charles Scott, and I represent the Forest Service. I guess I should probably start, Judge Graber, by answering your question. About the meaning of footnote three, what is your position about future contracts   Well, there are two parts to that answer, then. In the first place, my understanding of footnote three was that we reserve the right to relitigate at the merits stage whether it could be, whether it could be possible to fit within NIFMA by allowing purchaser marking. However, as is noted, as the district court noted, when it vacated the preliminary injunction, I'm sorry, actually, at a later stage of the proceedings, which is reproduced at page 14 of the supplemental excerpts of record, the Forest Service never raised this issue again on the merits in this case or in any related litigation. Well, that doesn't quite answer my question. It seems to me that the length of litigation makes this kind of case a classic one, potentially for a capable of repetition yet evading review, potentially, because the seasons for cutting are short, litigation is long. And what I'm trying to understand is whether the Forest Service contends that it can and may go back to the old contract language in future contracts, or whether you've given that up in the manner that I was asking opposing counsel. I understand. And I'll try and explain. One of the things that I was ñ that I needed to explain to the Court this morning was to provide a quick update on the status of logging, salvage logging, under the Biscuit Project EIS and its associated records of decision. Those are the final agency actions at issue here that authorize logging. And the Forest Service has informed me that no further salvage logging is going to take place under the Biscuit Project EIS and its associated records of decision. In one of the related cases, the second Cascadia Wildlands Project case, we filed a declaration from a staff officer responsible for salvage in the forest indicating as much, and that case was discussed as moot. So to the extent that you're asking ñ Discussed or dismissed? I'm sorry. Dismissed as moot. Okay. I wasn't sure what you were getting at. My apologies. To answer your question about capable of repetition yet evading review, there are two requirements that need to be met. And neither one is met here. In the first place, there has to be a reasonable expectation that the challenge conduct will occur again, that the same plaintiff will be subject to the same injury. Because as I've just explained, there will be no further salvage sales under this EIS in the Biscuit Recovery Area. There cannot be a reasonable expectation that plaintiffs will be subjected to the same alleged harm again. And the second requirement is that the action be one that is inherently limited in duration so as to avoid judicial review. And in the Headwaters case, this question is ñ You're going to lose me on that point, I think, because of the shortness of the time. But ñ Well, I would point you, Your Honor, to the Headwaters case, which ñ and the question is not whether something did occur before final full judicial review could occur, but whether the action is of a character inherently likely to end before judicial review can occur. And that was the argument raised in a challenge to timber sales in the Headwaters case. And in that case, the Court found that this timber sale was not inherently limited in duration. And I think it was specifically because of the possibilities of obtaining stays pending appeal and emergency injunctive relief from the Court of Appeals, which the plaintiffs here sought twice. And the Headwaters case also said that it's irrelevant that that requested relief be denied. How would a plaintiff go about challenging what apparently is in the Forest Service Manual that assertedly is contrary to statute procedurally? I think that Article III would require the Court to only consider that issue when that provision of the Forest Service Manual has actually been applied, which it hasn't here. So another EIS, another forest, another plaintiff, or maybe the same plaintiff? Perhaps the same plaintiff, but I need to explain one other thing. There's been reference to contractual language being amended here. In fact, the contractual language that's read, the first two versions of contractual language that are in the record, pages 7 and 85 of the appellant's excerpts, that is sample contractual language. It was not actually implemented. In the first place, it's undisputed that in this case, none of the four sales at issue did timber purchasers actually mark trees to be cut. In the second place, timber purchasers were not actually even vested with the right to do that because no contract allowing that was ever entered into by the Forest Service. I have to ask you for clarification. Opposing counsel described marking as marking trees not to be cut, and you've described it as trees to be cut. Is it both? Is it either? Does it depend on the circumstance? That's my mistake. The statutory provision, I think, may allow for both, but in this case, we're talking about marking trees to be retained. Okay. That leaves open the question, then, what is the Forest Service position with respect to allowing purchasers to mark the trees that will not be cut? Your Honor, I'm not sure what the answer to that question is in the context of all future Forest Service sales. What I can say is that it didn't happen in this case, and there aren't going to be any more salvage sales under the EIS and records of decision in this case. So I'm not sure that the issue really matters or that the Court is authorized to rule on it at this point. Do you agree with Mr. Berktold that the Forest Service manual presently allows for the entering into sales where the purchasers do the marking? It – I should take a look at the language before I answer that question. It refers to the use of designation by prescription on scaled sales when the purchaser marks the timber for Forest Service inspection and approval prior to cutting. I suppose the Forest Service reserved the right to relitigate that issue in this case, and it never came up. And I wouldn't want to speculate on what the position would be in future sales. Well, is it your position either because of an alleged bootness or otherwise or that there is no evidence in the record here that we can't reach that question in this case? I think that this case is moot because there is no effective relief that this Court can grant for any injury actually sustained by the plaintiffs. They haven't pointed to any marking of trees to be retained by Mr. Uherich in these four sales that were incorrectly done. All they've pointed to, as Your Honor has noted – But this is a procedural injury case. The statute says who may mark trees and who may not mark trees. That's a who and how. And the manual, at least these contract provisions, seems to be directly contrary to what the statute requires. And under your theory, it would be impossible for anyone to have procedural standing. I have two responses to that. I think the procedural argument, injury argument, can't work for two reasons. In our brief, we stated that it is inapplicable here because NIFMA is a substantive statute. I think if you look at some of the – Mostly, but not internally. This is a procedure. Who does the marking? It doesn't talk about anything other than who and how. All management actions undertaken in forests have to be compliant with the applicable forest plan. In this case, that's the SISCU plan amended by the Northwest Forest Plan. This Court has held that the forest plan provides a substantive underpinnings for the requirements. The process of selecting which trees the Forest Service is going to allow to be cut and which trees it's going to make the purchaser leave in place is a highly substantive one. If you take a look at Appendix G to the Biscuit EIS, which is reproduced in the appellant's excerpts of record, pages 28 through 35 describe the process of determining which trees to retain and which to cut. We don't think that this provision is analogous to procedural requirements in the paradigmatic example being NEPA that don't mandate any substantive outline. Well, let me give you an example. Let's say that five trees in an area are marked for retention, okay, and that is substantively correct. They've used the right criteria, the right trees, but they've used the purchaser. That would seem to be substantively correct, but procedurally improper. What is a plaintiff to do with that situation? Because presumably Congress believed that this procedure carried a substantive risk, even if not a substantive problem in reality. How would a plaintiff ever, under your theory, be able to challenge what appears on its face to be a violation of a statute? If the Court were to consider Section 472 as providing a procedural requirement that could give the basis for a procedural injury sufficient for standing, the plaintiff is still required to show not just a connection, but, and this is from the Citizens for Better Forestry case, a reasonable probability that the specific procedural violation alleged threatened their concrete interests. And so in this case, or what the plaintiffs here would have been required to show was a reasonable probability that allowing Mr. Uherich to mark trees, there was a reasonable probability that that would result in the wrong trees being cut down, which would be a threat to their aesthetic interests. And if one looks at the facts of this case, there's simply no basis for finding that reasonable probability. I mean... It sounds like you're not really in a position to tell us what the government's position is on the merits. Is that fair? I mean, Judge O'Scanlan asked you in two or three very polite ways to do that, and you haven't. Oh, I'm sorry. I should say that. Does the government defend the use of nonemployees, procedurally speaking or substantively, however you want to view it, in spite of the statutory text? In this case specifically, it's the Forest Service's position that it was not arbitrary and capricious for the Forest Service to consider Mr. Uherich. And I wouldn't want to speculate about potential other... He was supervised, correct? He was supervised in the field. I'm not the record is somewhat unclear on exactly what the nature of the supervision was, but part of the scheme that resulted in the district court lifting the preliminary injunction was that for each unit of timber sale marked, there was a tracking worksheet indicating how many snags had been retained in a given area, what their size had been, and how this fit with the requirements of the sale-specific snag retention guidelines. So, yes, there was supervision and follow-up. Yeah. I mean, it doesn't say paid employees, so I see your point there. But what is your position with respect to purchaser marking and this statute? I think that our – I still don't think that the issue is really before the Court, but what we said in footnote 3 of our motion to vacate the preliminary injunction was that we thought that it could be possible for the prescriptions to be so specific and for – that is, for which snag should be retained, that with Forest Service actually checking up and designating the trees technically, it could fit within the statute. Again, that's not an issue here. I don't even understand that answer. I just don't. I don't understand the answer as to whether a purchaser can do the things that are listed in the statute to be done by employees of the Department of Agriculture. I think that if the Forest Service can be sufficiently specific in terms of – and there were specific prescriptions for snag retentions in this case, specific to each unit based on the Northwest Forest Plan and based on the Biscuit EIS. So what we disputed in footnote 3 was can the Forest Service be so specific as to which snags to retain and where they should be that even if you initially allowed the purchasers to pick out those snags, subject to approval by the Forest Service on the ground, would that not satisfy the statutory requirement? And we reserved the right to relitigate that issue. Again, it's undisputed that that did not occur here. And again, since there will be no further salvage sales under the Biscuit EIS, there's no reasonable probability that it could occur again in this case, which is the only case that plaintiffs have standing to challenge. Is there any document that demonstrates that there will be no further salvage logging under this EIS? Your Honor, in the related case, we filed a declaration. I actually obtained this morning from the Forest Service an analogous declaration from the supervisor of the Siskiyou National Forest stating this much. I have the original in copies with me, if the Court would like to have those now, or I can file them after the fact. Well, we may issue a post-argument order applicable to both parties so that the other side has a chance to comment on whatever it is you're going to show. But it occurred to me that you indicated that in the Cascadia case, there is in that record a document or a declaration of some sort. In the second Cascadia case, there was a declaration filed from Robert Schell, who is the staff officer at the Siskiyou National Forest in charge of salvage sales, stating that no further salvage sales would occur, would be advertised, or sold. Well, we may ask you to suggest that we take judicial notice, and the other side will have an opportunity to contest that, of that document, and to the extent it's already in another proceeding in this – in our court or in the district? The declaration was filed in the district court. And it was filed last November 20th, and the case was dismissed as moot on the 30th. I didn't become aware of the existence of the declaration that I have today until last week, and I wasn't able to get my hands on a hard copy until this morning. Well, if we feel that any of this is of interest in terms of this case, we will file an order indicating our interest. I'd just like to quickly make a couple of related points. Our mootness argument here is based on the lack of availability of effective relief. That is, as the district court noted, the plaintiffs haven't pointed to anything – any harm to themselves from the specific statutory violation alleged here, and that's Mr. Uherich marking trees, not any other potential marking of trees by anybody else in any other sale in the future. They haven't pointed to anything that harmed them. The only harm they showed was at most a generalized interest in having the Forest Service follow the law, which is clearly insufficient for Article III. Or the other possibility is that they've suffered aesthetic harm as a result of salvage logging in the Biscuit Project recovery area generally. But the legality of the practice is not at issue before the court here. And actually, in January of this past year, in the related Siskiyou Regional Education Project case, there was an unpublished decision from this court that upheld salvage logging in the Biscuit Project area as consistent with the Northwest Forest Plan and the National Forest Management Act. If I may, and I don't mean to belabor the court with this, but I would like to quickly go through the facts of who Peter Uherich was so that one can actually determine whether it was arbitrary and capricious for the Forest Service to consider him to fit within the statutory definition of employed for the purposes of this. Some of this information may not be in the record. I'm not certain. But he has a master's degree in forestry. He is a skilled forester from the Czech Republic who was working for the Forest Service. Well, how come we can consider things that aren't in the record? I'm uncertain whether it's in the district court record is why I say that. Well, then maybe you should stick to things that you are sure are in the record. All right. He was working as a Forest Service trainee under a Congress and State Department authorized exchange program for skilled professionals. He received housing and a stipend from the Forest Service. He worked regular hours. At the time of the sales, he had had roughly 15 months of on-the-job training from the Forest Service in this forest, including in timber salvage, and he had agreed to follow all Forest Service rules as part of his J-1 visa sponsorship agreement. By the way, it's correct. One can only get one J-1 visa in one's lifetime, so he will in all likelihood not be back as a trainee. He was supervised by the Forest Service employees in the field. On 37, he marked units for sale in the end. He marked timber for retention in 37 units of sales here. In 34 of those units, he collaborated with another Forest Service employee. And as I've said, all marking was done in accordance with sales-specific snag retention guidelines based on the Biscuit Project EIS, the Northwest Forest Plan, and there were tracking worksheets to follow up to ensure that it was done properly. There is no allegation that he did not follow the appropriate marking guidelines, and there is no allegation that he had any interest whatsoever in the purchase of the timber. I think that that shows that even with the procedural injury argument made, there is no reasonable probability that using him to mark timber threatened the plaintiff's concrete interests. And moreover, it shows that it was not arbitrary and capricious for the Forest Service to consider that he fit the statutory definition of employed by for purposes of that statutory section. And if the Court has no further questions? Roberts, does the Forest Service concede, then, that in terms of the procedural harm that plaintiffs have succeeded in their standing argument that they were, in fact, injured by the failure to follow procedure? No. That is not the Forest Service position. Again, my arguments, there are two arguments. First, I do not think that Section 472 imposes a procedural requirement analogous to NEPA requirements, which are the paradigmatic cases that have been used for procedural standing. We don't think that a cognizable procedural injury can be asserted under that provision of the statute. And second, even if it were, we find that we argue that there is no reasonable probability that it threatened any concrete interests, so the procedural injury argument would fail anyway. Because of this individual. Because of the specific one has to look at the specific facts of the specific procedural violation alleged. I think that if, in other cases, such as the Citizens for Better Forestry case, there is careful analysis of what was the procedural violation specifically, not what could it hypothetically be, but what happened here. Thank you, counsel. Your time has expired. We will hear from Mr. Berktold. You have some reserve time. Thank you, Your Honor. I'd like to draw the Court's attention to the Biodiversity Legal Foundation v. Badgley case 309F301166. The situation there where there's two parties in recurring litigation. And the mootness question came up. And there, the Court talked about it. Look, this is a case where they've litigated this here, they've litigated it again, it's going to come up again. And the situation here is the Supreme Court said whether the facts alleged under all circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. And the Court went on to state several cases similar to this where it said, yes, we can do this, even though the injunction's been issued and that part's moot, we need to figure this out and make a declaratory judgment so that parties can figure out where they're going to go henceforth. The Court said, let's take a look at this now and let's solve it now so they don't have to file a suit again and again and again and again. So that's the situation. Now, regarding Chevron deference, what Chevron says is that if the statute's clear, then you're done. And here, the statute says you have to have employees of the secretary. Either you're an employee or you're not. It's just straight up. There's no reason to defer to any sort of interpretation of what the Forest Service may employee is or not employee is, because that's not at issue. The statute is clear on its face. Scalia. Would you comment on that filing that we heard about in the Cascadia case? To what extent is a firm determination not to have any more sales in this area relevant to this case? It's SC's understanding that the Forest Service has finished cutting trees for the Biscuit Project. Well, that affects mootness, does it not? Well, it affects mootness to some degree. If you're saying, contrary to the biodiversity case, if you're saying, well, this is something that's done now and that's it because this case is over, it doesn't matter if the Forest Service says they can keep doing it. For this case, they can't do it anymore. And, you know, luckily, it took three years for this case to get through the courts, so it's moot. Well, suppose, it's not in the record, but suppose there were a forest sale in New Hampshire totally outside the jurisdiction of the Ninth Circuit, which might use the offending, let's say, language that you're litigating. Would that be covered by anything we could do in this case? If you issued a declaratory judgment that the Forest Service may not use the offending language and that the Forest Service Handbook 144103 is contrary to the statute, then, yes, I think it would affect how the Forest Service handled that sale. No further questions. No further questions. Thank you, counsel. The case just argued will be submitted for decision. And the Court will take a five-minute recess. Thank you.
judges: O'scannlain, Graber, Callahan